1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Gayle W. Brown,                              No. 2:19-CV-01921-KJM-AC

12                     Plaintiff,                 ORDER

13          v.

14   Simpson Strong-Tie Co., Inc. et al.,

15                     Defendants.

16

17          Plaintiff Gayle W. Brown claims he experienced racially disparate treatment, retaliation,

18   and a hostile work environment in violation of 42 U.S.C. § 1981.  Defendant Simpson Strong-Tie

19   Co., Inc. (Simpson), his employer, moves for summary judgment.  The court submitted the matter

20   on the papers.  As explained in this order, when Brown's undisputed evidence is "judged from the

21   perspective of a reasonable person in [his] position, considering 'all the circumstances,'"

22   *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (quoting *Oncale v. Sundowner*

23   *Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)), there are genuine factual disputes remaining for

24   each of Brown's claims.  **The motion is denied.**

25          I.      **LEGAL STANDARD**

26          A court may grant summary judgment only if "no genuine dispute as to any material fact"

27   remains unresolved and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

28   56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can

                                              1

1   be resolved only by a finder of fact because they may reasonably be resolved in favor of either

2   party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Evidence presented by the

3   parties at the summary judgment stage must be admissible.  Fed. R. Civ. Proc. 56(e)(1).  In

4   reviewing the record, the court does not make credibility determinations or weigh conflicting

5   evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party.

6   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 6 U.S. 574, 587–88 (1986); *Whitman v. Mineta*,

7   541 F.3d 929, 931 (9th Cir. 2008).

8        The court addresses each claim in turn.

9   **II.    DISPARATE TREATMENT CLAIM**

10       To establish a *prima facie* case of disparate treatment, a plaintiff must show "(1) he

11  belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse

12  employment action; and (4) similarly situated individuals outside his protected class were treated

13  more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (2000)

14  (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).  At summary judgment,

15  "[t]he requisite degree of proof necessary to establish a *prima facie* case for [disparate treatment]

16  . . . is minimal and does not even need to rise to the level of a preponderance of the evidence."

17  *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).  If plaintiff

18  succeeds at this first step, "[t]he burden then must shift to the employer to articulate some

19  legitimate, nondiscriminatory reason for the employee's rejection." *Id.*  If the employer

20  demonstrates a nondiscriminatory reason, plaintiff must then present evidence that the reason was

21  pretextual. *Id.*  He may do so "(1) by showing that unlawful discrimination more than likely

22  motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy

23  of credence because it is inconsistent or otherwise not believable." *Id.*

24       **a.  Prima Facie Case**

25       Regarding the elements of a prima facie case, there is no dispute Mr. Brown belongs to a

26  protected class, namely that he is African American, and was qualified.  The parties disagree

27  regarding the third element, whether a jury could find the employment action he challenges is an

28  adverse employment action.  Mot. at 27, ECF No. 22; Opp'n at 9, ECF No. 24.  In 2016,

1   Mr. Brown was transferred from the shipping department to the shear wall department.  His pay

2   did not change, but his responsibilities no longer included operating a forklift, Third Am. Compl.

3   (TAC) ¶ 49, ECF No. 16,[1] his forklift privileges were permanently revoked, *id*., and he received

4   decreased opportunities for overtime, *id*. ¶ 40; Rosado Decl. at 1, ECF No. 24-20 (coworker

5   observing that Brown's relocation to shear wall department was "unfair" and without "a valid

6   explanation" ).  "[A] lateral transfer . . . to another job of the same pay and status may constitute

7   an adverse employment action" when the reassignment is otherwise disadvantageous.  *Ray v.*

8   *Henderson*, 217 F.3d 1234, 1240–41 (9th Cir. 2000).  "Whether a particular reassignment is

9   materially adverse depends upon the circumstances of the particular case . . . ." *Burlington N. &*

10  *Santa Fe Ry. Co.,* 548 U.S. at 71.  Based on the record before the court, a reasonable factfinder

11  considering the circumstances could find Mr. Brown's transfer was an adverse employment

12  action.

13          Regarding the fourth element Mr. Brown has pointed to evidence that similarly situated

14  individuals outside his protected class were treated more favorably.  *See, e.g.*, Statement of

15  Undisputed Facts (SUF)[2] ¶¶ 14–17, ECF No. 25-1 (it took Brown three years to reach "top pay"

16  after his reassignment, but people outside his protected class who were white reached "top pay"

17  in only six months); *id*. ¶ 78 (Brown passed over for day shift in shipping department, with

18  accompanying benefits, despite having seniority over other employees outside his protected class

19  who were white).  On this record, a reasonable factfinder could find Mr. Brown has "offer[ed]

20  evidence that give[s] rise to an inference of unlawful discrimination," suggesting his race played a

21  role in Simpson's decisions, as required to defeat summary judgment as to a prima facie case.

22  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citation omitted).

---

[1] Because Mr. Brown verified his complaint, and because the allegations cited here are specifically pleaded and based on his personal knowledge, he may rely on those allegations in opposing Simpson's motion. *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000); *see* TAC at 20.

[2] In citing to the summary undisputed facts, the court has checked the underlying evidence and confirmed the accuracy of the summary.

1

**b.  Legitimate Nondiscriminatory Reason**

2      Because Mr. Brown has established that a jury could find he has proven a prima facie

3  case, the burden shifts to the defense at step two.  Simpson has articulated a legitimate,

4  nondiscriminatory reason for transferring Brown, and points to evidence in support of its claim.

5  Specifically, Simpson cites Brown's concession that it transferred Brown and another employee,

6  Medrano, out of the shipping department without reducing their wages in order to help them "iron

7  out" their differences.  Mot. at 16 (citing Brown Dep. 173:4–18, ECF No. 22-3).  A reasonable

8  factfinder could find Simpson meets its burden in this respect.

9

**c.  Pretext**

10      The burden thus shifts back to plaintiff at step three, pretext.  The parties disagree about

11  whether Simpson's reason for the transfer was a pretext for discrimination.  Mr. Brown cites

12  evidence showing his multiple unsuccessful attempts to return to the shipping department

13  following Medrano's transfer to a different department, including attempts after Brown had not

14  had any contact with Medrano for many years.  SUF ¶¶ 40, 57, 77; *see generally* Brown Personal

15  Notes, ECF No. 24-24.  He also cites evidence that Medrano was allowed to return to the

16  shipping department and become a "lead."  *See* Cervantez Dep. 91:21–23, ECF No. 24-16.  And

17  despite Brown's greater seniority over several other employees assigned to the shipping

18  department on day shift, Simpson ignored Brown and declined to  "rehash" his requests to return

19  to the shipping department.  *Id*. at 92:22–25.

20      With these facts, the court finds a reasonable factfinder could conclude there is sufficient

21  evidence that Simpson's proffered explanation is inconsistent with the totality of the record.

22      Brown has raised a genuine issue of material fact to survive summary judgment on the

23  disparate treatment claim.

24  **III.   RETALIATION CLAIM**

25      Simpson also seeks summary judgment of Mr. Brown's retaliation claim.  The same

26  *McDonnell Douglas* burden shifting framework applies to a claim of retaliation under § 1981. ‼

27  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105, 1107–08 (9th Cir. 2008).  To make out a

4

1   *prima facie* case of retaliation, a plaintiff must prove "(1) [he] engaged in a protected activity;

2   (2) [he] suffered an adverse employment action; and (3) there was a causal connection between

3   the two." *Id.* at 1108.

### a.  Prima Facie Case

5   On the first element, it is undisputed Mr. Brown was transferred after he was scheduled to

6   meet with the company's CEO to report his concerns about racial discrimination.  *See* SUF ¶ 71.

7   It also is undisputed that Brown subsequently met with the company's CEO and reported his

8   concerns.  *Id.*  As a matter of law, reports of racial discrimination are protected activity.  *See, e.g.*,

9   *Holmes v. Tenderloin Hous. Clinic, Inc.*, 772 F. Supp. 2d 1074, 1095 (N.D. Cal. 2011) (noting

10   activity protected by § 1981 includes making complaint of employment discrimination).  On the

11   record before the court, a jury could find Brown engaged in protected activity.

12   On the second element, for the same reasons reviewed above regarding disparate

13   treatment, a jury could find Mr. Brown's transfer was an adverse employment action.

14   On the third element, Simpson argues Mr. Brown cannot establish his "protected activity

15   *caused* any adverse action" and that he identifies only "an assortment of workplace gripes."

16   Mot. at 27–28 (emphasis in original).  The "[c]ausation sufficient to establish the third element"

17   of a plaintiff's prima facie case in this instance "may be inferred from . . . the proximity in time

18   between the protected action and the allegedly retaliatory employment decision."  *Williams v.*

19   *Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008) (unpublished) (quoting *Yartzoff*

20   *v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987)).  If a plaintiff, as here, relies solely on the

21   proximity in time inference to support the causation prong, that proximity in time must be "very

22   close."  *Id*. (quoting *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001) (per

23   curiam) (citing cases finding three-month period and four-month period too long)).  Here,

24   Simpson transferred Mr. Brown about a month after he requested the meeting with the CEO.

25   SUF ¶ 73.  This short period of time would permit the jury to draw an inference of causation.

### b.  Legitimate Nondiscriminatory Reason and Pretext

27   In applying the burden-shifting framework, the parties point to the same evidence

28   discussed in the previous section on disparate treatment regarding whether Simpson had a

1  legitimate reason to transfer Mr. Brown and Brown has raised a genuine issue of material fact

2  about whether Simpson's reason for the transfer was pretextual for what was in fact

3  discrimination.  The court resolves these questions in the same way as it has above.

4       Simpson's motion is denied with respect to Mr. Brown's retaliation claim.

5       **IV.   HOSTILE WORK ENVIRONMENT CLAIM**

6       A hostile work environment interferes with the "enjoyment of all benefits . . . and

7  conditions of the contractual relationship" of employment and is therefore actionable under

8  § 1981.  *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003).  To establish a *prima*

9  *facie* hostile work environment claim under either Title VII or § 1981, Mr. Brown must raise a

10 triable issue of fact as to whether (1) he was "subjected to verbal or physical conduct" because of

11 his race, (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or

12 pervasive to alter the conditions of [his] employment and create an abusive work environment."

13 *Kang v. U. Lim Am., Inc*., 296 F.3d 810, 817 (9th Cir. 2002).  Ultimately, determining whether an

14 actionable hostile environment claim exists requires an "examination of all the circumstances,

15 including the frequency of the discriminatory conduct; its severity; whether it is physically

16 threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

17 with an employee's work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

18 103 (2002).

19       **a.  Prima Facie Case**

20       If the jury credited Mr. Brown's evidence, it could find he was subjected to unwelcome

21 verbal and physical conduct, the first two elements of a prima facie case.  Brown has pointed to

22 his prior documentation that he and another Black employees were required to work in a loading

23 dock area with the doors closed on a day when the temperature was 110 degrees Fahrenheit, while

24 other employees who were not Black were allowed to work with the doors open.  *See* Incident

25 Report, ECF No. 24-3 (Brown reported incident to human resources as "racial harassment").

26 Mr. Brown has also cited his own sworn testimony that supervisors screamed and yelled at him

27 and made demeaning comments about him in front of human resources staff and other employees

28 because he had complained about the warehouse roll-up doors being down, *see* Brown Dep.

202:19–204:6, ECF No. 24-14; he also avers supervisors told him if he had concerns about his health during the heat wave to find another job, *id*. 223:14–25; *see also* Brown Personal Notes. Even though Brown's testimony may be self-serving, it is for a jury to assess his credibility. *See Peterson v. Nat'l Sec. Techs., LLC*, No. 12-CV-5025, 2013 WL 5316058, at *4 (E.D. Wash. Sept. 18, 2013). Brown also says Simpson refused to investigate Brown's second complaint regarding Medrano's "racial discriminatory conduct" of closing the warehouse doors "on two black employees," Miles Report at 1, ECF No. 24-9, despite Medrano's history of making discriminatory statements about other African American employees as well, Brown Dep. 93:6–20 ECF No. 109. Additionally, Simpson fired the other African American employee, who had also complained about racial discrimination. *See generally* Miles Report.

Allegations of a racially hostile workplace "must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *McGinest v. GTE Serv. Corp*., 360 F.3d 1103, 1115 (9th Cir. 2004). A reasonable fact finder could interpret the yelling and screaming and generally antagonizing conduct Mr. Brown experienced as motivated by racial animus, and sufficiently severe so as to contribute to a racially hostile work environment. Simpson argues this conduct was not so severe that a jury could conclude that it altered the terms and conditions of Brown's employment or rendered the work environment abusive. *See, e.g.*, Reply at 8–10 (citing *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998)). Viewing the evidence in the light most favorable to Mr. Brown, the court cannot conclude that any reasonable fact finder would clearly agree with Simpson's assessment. A "jury should be tasked with determining whether a reasonable African American would find [Simpson's] workplace so objectively and subjectively racially hostile as to create an abusive working environment." *U.S. E.E.O.C. v. Wedco, Inc*., 65 F. Supp. 3d 993, 1004 (D. Nev. 2014).

Additionally, when, as here, the question is summary judgment, the court has discretion and authority to exercise "caution" and "deny summary judgment" if "there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A denial may well be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995)

1    (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).  The court declines to hold

2    here, as a matter of law, that Mr. Brown's workplace was not abusive.

3         Simpson's motion with respect to Mr. Brown's hostile work environment claim is denied.

4    **V.    CONCLUSION**

5         For the reasons previously explained, **the motion for summary judgment is denied**.  A

6    final pretrial conference is set for **January 21, 2022 at 10:00 a.m.**  The parties shall meet and

7    confer and file a joint pretrial statement no less than three weeks prior to the final pretrial

8    conference.

9         The provisions of Local Rule 281 shall apply with respect to the matters to be included in

10   the joint pretrial statement.  At least one of the attorneys who will conduct the trial for each of the

11   parties shall attend the final pretrial conference.  All motions *in limine* must be filed in

12   conjunction with the joint pretrial statement.  In most cases, motions *in limine* are addressed and

13   resolved on the morning of the first day of trial.  The parties may alert the court at the final

14   pretrial conference and in their final joint pretrial statement that a particular motion or motions

15   should be resolved earlier.  At the final pretrial conference, the court will set a briefing and

16   hearing schedule on the motions *in limine* as necessary.  The parties are reminded that a motion *in*

17   *limine* is a pretrial procedural device designed to address the admissibility of evidence.  The court

18   looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial

19   in the guise of motions *in limine*.

20        This order resolves ECF No. 22.

21        IT IS SO ORDERED.

22   DATED:  December 29, 2021.

23

_____
CHIEF UNITED STATES DISTRICT JUDGE